**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION**

| | |
|---|---|
| **JAMES BRADLEY OWEN,** | ) |
| | ) Case No. _____ |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| **CHRISTOPHER M. GOODWIN**, in his individual and official capacities as sheriff's deputy of Henderson County North Carolina, | ) |
| **BENJAMIN HAWKINS**, in his individual and official capacities as sheriff's deputy of Henderson County North Carolina, | ) |
| | ) **COMPLAINT** |
| **JACOB TIPTON**, in his individual and official capacities as sheriff's deputy of Henderson County North Carolina, | ) **JURY DEMAND ENDORSED HEREIN** |
| **NICHOLAS A. NEWELL**, in his individual and official capacities as sheriff's deputy of Henderson County North Carolina, | ) |
| **LOWELL S. GRIFFIN**, in his official capacity as Sheriff of Henderson County, North Carolina, | ) |
| **CHARLES S. MCDONALD**, in his official capacity as former Sheriff of Henderson County, North Carolina; and | ) |
| **HENDERSON COUNTY, NORTH CAROLINA**, | ) |
| *Defendants.* | ) |

The Plaintiff, by and through undersigned counsel, complains of the Defendants as follows:

# INTRODUCTION

1. On or around August 11, 2018, deputies of the Henderson County Sheriff's Office joined as Defendants in this action violated the civil rights of James Bradley Owen ("Mr. Owen") by destroying his property and using excessive force resulting in significant physical and/or emotional and/or psychological injuries when taking him into custody. More specifically, said deputies committed the following acts:

   a. Savagely beating Mr. Owen despite his compliance with the deputies' orders, hands being raised, being unarmed, and/or his being defenseless and not resisting at the time; and

   b. Rather than reasonably securing or confining in a non-lethal manner, killing Mr. Owen's dog in front of Mr. Owen despite said dog displaying no aggression or threatening behavior toward said deputies.

2. The above actions constitute violations of Mr. Owen's civil rights protected by the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 14141(a) (re-codified at 34 U.S.C. 12601(a)), N.C. Gen. Stat. §§ 15A-401(d)(1), and other applicable federal and/or state law, were willfully and maliciously committed, and demonstrate a blatant, wanton disregard for Mr. Owen's civil rights.

# JURISDICTION AND VENUE

3. This action arises under the Fourth and Fourteenth Amendments to the United States Constitution, as applied to the states through the Fourteenth Amendment, 34 U.S.C. 12601(a), Article I § 19 of the North Carolina Constitution, the North Carolina General Statutes and state law, and is brought pursuant to 42 U.S.C. § 1983.

4. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1367, and 28 U.S.C. § 1343(a). because the Plaintiff alleges questions arising under the Fourth and Fourteenth Amendments to the Constitution of the United States and to redress the deprivation, under color of state law, statute, ordinance, regulation, custom or usage, of rights secured by the Constitution of the United States, and because this case alleges claims that are so related to claims in the action within the original jurisdiction of this court that they form part of the same case or controversy under Article III of the United States Constitution.

5. This Court is authorized to grant the Plaintiff's prayer for relief regarding costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

6. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Western District of North Carolina, the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and/or, upon information and belief, the Defendants are seated and/or reside within the Western District of North Carolina.

## **JURY DEMAND**

7. Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiff hereby requests a jury trial on all issues and claims set forth in this Complaint.

## **PARTIES**

8. James Bradley Owen ("Mr. Owen") is a citizen and resident of Henderson County, North Carolina.

9. Defendant Christopher Goodwin ("Goodwin") is a deputy of the Henderson County Sheriff's Office ("HCSO") in Henderson County, North Carolina. Goodwin became a patrol deputy of HCSO approximately two (2) years prior to the events giving rise to this action having acquired approximately fifteen (15) years of law enforcement training in both military and civilian

settings prior to joining the HCSO. Goodwin was the first sheriff's deputy to arrive to the scene where the events giving rise to this action occurred, and, upon information and belief, is still a sheriff's deputy employed by the Henderson County Sheriff's Office.

10. Defendant Benjamin Hawkins ("Hawkins") is a deputy employed by HCSO. After graduating from BLET in 2010, Hawkins began working at the Transylvania County Jail, in Brevard, North Carolina until joining HCSO in 2012. Hawkins was a sheriff's deputy who responded to the scene where the events giving rise to this action occurred, and, upon information and belief, is still a sheriff's deputy employed by the Henderson County Sheriff's Office.

11. Defendant Jacob Tipton ("Tipton") is a deputy employed by HCSO. After graduating from BLET, Tipton first became a courthouse security officer for HCSO, holding that position for approximately two and one-half (2.5) years. Tipton then became a deputy of the HCSO and a member of the HCSO Special Weapons and Tactics Unit ("SWAT") team, holding those positions as the time of the events giving rise to this action. Tipton was a sheriff's deputy who responded to the scene where the events giving rise to this action occurred, and, upon information and belief, is still a sheriff's deputy employed by the Henderson County Sheriff's Office.

12. Defendant Nicholas Newell ("Newell") has been employed as a deputy with HCSO for approximately 11 years prior to the events giving rise to this action. After graduating BLET, Newell accepted a job in the Henderson County Detention Facility ("HCDF") as a detention officer. Newell was promoted to sergeant and then served as acting lieutenant for the HCDF. Newell then became a sheriff's deputy for HCSO prior to the incident referenced herein. Approximately ten (10) days after the incident referenced herein, Newell became a school recourse officer for HCSO. Newell was a sheriff's deputy who responded to the scene where the events

giving rise to this action occurred, and, upon information and belief, is still a sheriff's deputy employed by the Henderson County Sheriff's Office.

13. Defendant Lowell S. Griffin ("Griffin") is the current elected Sheriff of Henderson County, North Carolina, and has worked in law enforcement since 1992. Sheriff Griffin first began his career with HSCO as a detention officer. Sheriff Griffin has worked in several divisions of the HCSO, including civil process, patrol, and captain of criminal divisions. Sheriff Griffin served as a law enforcement instructor at Blue Ridge Community College. Sheriff Griffin also lead the narcotics division and interdiction programs with the Polk County Sheriff's Office, in Columbus, North Carolina. On December 6, 2018, Sheriff Griffin was sworn in as the Sheriff of the HCSO.

14. Defendant Charles S. McDonald ("Former Sheriff McDonald") is the former elected Sheriff of Henderson County, North Carolina, and began his career with the HCSO as a deputy in 1985. Former Sheriff McDonald, during his career with the HCSO, served as detective, drug agent, lieutenant over Training and Career Development, chief of Criminal Investigations, captain over the jail, public information officer, and Internal Affairs investigator before retiring as a Captain in 2010. Former Sheriff McDonald first became Sheriff of Henderson County by appointment to the position in 2012. He was elected to a full term as Sheriff of Henderson County in 2014 and was the elected Sheriff at the time that the events giving rise to this action occurred.

15. Defendant Henderson County, North Carolina, ("Henderson County") is a governmental subdivision of the State of North Carolina and is a municipal entity organized under the North Carolina Constitution and the laws of the State of North Carolina. Henderson County has the authority to sue and be sued and was, at all times relevant herein, acting within the course and scope of its authority under color of law.

# FACTS

16. On or around August 11, 2018, a phone call was placed to the Henderson County Dispatch ("Dispatch") by Larry White ("White") during which White claimed two individuals in a brown pickup truck were shooting at a deer in a field near the North and South Mills River Community Center ("Community Center").

17. Goodwin responded to the call and informed Dispatch that he found a truck matching the description given by White. The truck was parked in the Community Center driveway, located at 596 South Mills River Road, Mills River, North Carolina 28759. Goodwin pulled into said driveway and parked behind the truck.

18. Upon exiting his vehicle and approaching the truck, Goodwin determined the truck's headlights and taillights were illuminated, and the doors were open, but there was nobody inside. Upon information and belief, Goodwin then announced his presence loudly enough for anyone in the general vicinity to have been alerted to his presence.

19. Goodwin then returned to his vehicle where he initiated his emergency lights and sounded his emergency alarm for approximately fifteen (15) seconds.

20. Goodwin then got out of his vehicle and proceeded toward the truck again when he heard a gunshot ring out and the "crack" of a bullet.

21. Goodwin returned to his vehicle and kneeled behind the engine block to provide cover from anymore gunshots. He contacted Dispatch, stating he was being shot at, and backed his vehicle down the driveway until he was parked in South Mills River Road. Goodwin, then, grabbed his rifle and exited the vehicle where he again took cover behind the engine block.

22. As Goodwin was taking cover behind the engine block, he saw Mr. Owen exiting the woods holding a rifle casually.

23. Upon information and belief, upon exiting the woods, Mr. Owen did not at any time discharge, aim, point, strike, assault, display, threaten, intimidate, or otherwise use said rifle in such a way that Goodwin would have reason to believe Mr. Owen intended to use the said rifle against him.

24. Goodwin "challenged" the Plaintiff by verbally screaming at him to put the rifle down. In compliance with Goodwin's command, the Plaintiff set the rifle on the tailgate of the truck. Goodwin then commanded the Plaintiff to walk towards him with his hands up, and Mr. Owen complied.

25. As Mr. Owen was complying with Goodwin's commands, Hawkins, Tipton, and Newell arrived to the scene and exited their vehicles with their shotguns and/or rifles.

26. Upon information and belief, Goodwin, Hawkins, Tipton, and Newell immediately proceeded toward Mr. Owen, with their weapons aimed at him, while shouting different commands at him, while Mr. Owen remained stationary, with his hands raised, and his dog sitting next to him.

27. As Goodwin, Hawkins, Tipton, and Newell were approaching Mr. Owen, a second individual, Hunter Wright ("Wright"), exited the woods and immediately laid down on his stomach.

28. As soon as the deputies got close enough to Mr. Owen, Hawkins struck him in the abdomen, then Tipton tackled him to the ground and began striking him in his face.

29. Newell joined in the beating of Mr. Owen while he was unarmed and on the ground by repeatedly striking him with his rifle as Tipton continued to strike him in the face.

30. During Mr. Owen's criminal trial, Newell testified that he used the barrel of his gun to strike Mr. Owen while he was unarmed, defenseless, and not resisting because "he was authorized to use lethal force."

31. Upon information and belief, as Hawkins, Tipton, and Newell were beating the Plaintiff, the Plaintiff's dog began to run in circles around the deputies but did not bite, scratch, run at, or otherwise behave threateningly or show any sign of aggression.

32. Upon information and belief, despite having Mr. Owen's non-aggressive canine on-scene, with Mr. Owen in no way encouraging or provoking the canine to harm anyone, Hawkins shot and killed Mr. Owen's dog rather than taking non-lethal action to secure or otherwise detain the dog as the beating of Mr. Owen continued.

33. Upon information and belief, after the beating of Mr. Owen concluded, Newell handcuffed him, secured him in his vehicle, and took him to the Sheriff's Office for booking.

**COUNT I: VIOLATION OF THE FOURTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND/OR VIOLATION OF ARTICLE I § 19 OF THE NORTH CAROLINA CONSTITUTION**

34. Plaintiff incorporates above paragraphs 1-33 by reference as if fully set forth herein.

35. Pursuant to 42 U.S.C. § 1983, "[E]very person who, under color of any statute, ordinance, regulation custom, or usage, or any State…subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress."

36. The Fourth Amendment to the United States Constitution states, in pertinent part, "[T]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV.

37. Article I § 19 of the North Carolina Constitution states, in pertinent part, "[N]o person shall be…in any manner deprived of his life, liberty, or property, but by the law of the land."

38. To constitute a seizure of a person, just as to constitute an arrest, there must be either the application of physical force, however slight, or, where that is absent, submission to an officer's "show of authority" to restrain the subject's liberty. *See California v. Hodari D.*, 499 U.S. 621 (1991).

39. Goodwin, Hawkins, Tipton, and/or Newell, during events described herein of August 11, 2018, related to the arrest of Mr. Owen, were acting under the color of statute, ordinance, regulation custom, or usage, of the State of North Carolina.

40. Goodwin, Hawkins, Tipton, and/or Newell showed a blatant disregard for the Plaintiffs' right to remain free from unreasonable seizure under the Fourth Amendment to the United States Constitution and/or right to remain free from unlawful deprivation of liberty under Article I § 19 of the North Carolina Constitution, and their above actions amounted to a willful violation of the same.

41. Mr. Owen's rights to remain free from unlawful seizure under the Fourth Amendment to the United States Constitution and/or right to remain free from unlawful deprivation of liberty under Article I § 19 of the North Carolina Constitution, were violated in that when arresting Mr. Owen, Goodwin, Hawkins, Tipton, and/or Newell, used excessive force to do so, in violation of N.C. Gen. Stat. § 15A-401(d), constituting an unreasonable seizure and/or unlawful deprivation of liberty of Mr. Owen.

42. At all times, Goodwin, Hawkins, Tipton, and/or Newell knew or should have known that the level of force used to arrest Mr. Owen was excessive to the point of violating N.C. Gen. Stat. § 15A-401(d), and their actions show a willful, malicious, and/or wanton disregard for Mr. Owen's rights and/or a willful, malicious, and/or wanton violation of N.C. Gen. Stat. § 15A-401(d).

43. As a result of the willful, malicious, and/or wanton disregard for Mr. Owen's rights by Goodwin, Hawkins, Tipton, and/or Newell, Mr. Owen suffered damages including but not limited to physical injuries, psychological and/or emotional trauma, costs and attorneys' fees for which the Defendants are liable under 42 U.S.C. §§ 1983 and 1988.

## COUNT II: ASSAULT AND BATTERY

44. Plaintiffs incorporate above paragraphs 1 - 43 by reference as if fully set forth herein.

45. Assault is an intentional act or display of force or violence by the Defendant which caused the Plaintiff a reasonable apprehension of imminent harm or offensive contact upon his or her person. *See Hawkins v. Hawkins,* 101 N.C. App. 529, 400 S.E.2d 472 (1991).

46. Battery is an infliction of harmful or offensive contact upon the Plaintiff's person without Plaintiff's consent. *Id.*

47. A police officer may be liable for assault and battery if, in making an arrest or securing control of an offender, the officer acts maliciously in the wanton abuse of authority or uses unnecessary and excessive force. When there is substantial evidence of unusual force, the jury must decide whether the officer acted as a reasonable person or whether he acted arbitrarily and maliciously. *Myrick v. Cooley,* 371 S.E.2d 492, 91 N.C. App. 209 (1988).

48. Goodwin, Hawkins, Tipton, and/or Newell unreasonably, maliciously, wantonly, unlawfully, and unnecessarily used excessive force in violation of N.C. Gen. Stat. § 15A-401(d) when arresting Mr. Owen on or around August 11, 2018, constituting assault and battery against Mr. Owen.

49. As a direct result of the assault and battery of Mr. Owen by Goodwin, Hawkins, Tipton, and/or Newell, Mr. Owen suffered damages including but not limited to physical

injuries, psychological and/or emotional trauma, costs and attorneys' fees for which the Defendants are liable under 42 U.S.C. §§ 1983 and 1988.

### COUNT III: UNLAWFUL DEPRIVATION OF PROPERTY

50. Plaintiff incorporates above paragraphs 1 - 49 by reference as if fully set forth herein.

51. Pursuant to Article I § 19 of the North Carolina Constitution, "[N]o person shall be…in any manner deprived of his life, liberty, or property, but by the law of the land."

52. Upon information and belief, at the time of Mr. Owen's arrest, Hawkins shot and killed Mr. Owen's dog instead of utilizing some non-lethal method to secure the dog.

53. Upon information and belief, Goodwin, Hawkins, Tipton, and/or Newell had reasonable means and opportunity to secure the dog using a non-lethal method and a reasonable person and/or law enforcement agent would have done so.

54. Upon information and belief, Hawkins shot and killed Mr. Owen's dog intentionally, maliciously, and willfully, as Hawkins executed the dog such that Mr. Owen was forced to witness it while being beaten by Goodwin, Tipton, and/or Newell.

55. Hawkins' execution of Mr. Owen's dog constitutes an unlawful deprivation of property in violation of Article I § 19 of the North Carolina Constitution.

56. Hawkins' execution of Mr. Owen's dog amounts to an intentional, malicious, and willful and wanton disregard of Mr. Owen's right to remain free from unlawful deprivation of property under Article I § 19 of the North Carolina Constitution.

57. As a result of Hawkins' intentional, malicious, and willful and wanton disregard of Mr. Owen's right to remain free from unlawful deprivation of property under Article I § 19 of the

North Carolina Constitution, Mr. Owen has suffered damages for which he can recover under 42 U.S.C. § 1983.

## COUNT IV: TRESPASS TO CHATTEL

58. Plaintiff incorporates above paragraphs 1-57 by reference as if fully set forth herein.

59. A defendant is liable for trespass to chattel when he intentionally dispossesses the chattel of another or intermeddles with the chattel of another when not privileged or authorized to do so. *See McDowell v. Davis,* 33 N.C.App. 529, 235 S.E.2d 869 (N.C. App. 1977).

60. Upon information and belief, Hawkins' intentionally dispossessed Mr. Owen's of the dog by killing it.

61. Upon information and belief, Hawkins was not privileged or otherwise authorized by law to dispossess Mr. Owen of the dog at the time he killed it because:

   a. the dog was not acting aggressively or threateningly toward any person present at the time;

   b. Mr. Owen was in no way provoking, directing, or encouraging the dog to act aggressively or threateningly toward ay person present at the time;

   c. all law enforcement agents present at the time had reasonable means and opportunity to secure the dog using a non-lethal method but failed to do so; and

   d. other reasons to be shown at trial.

62. Upon information and belief, Hawkins maliciously and/or willfully and wantonly dispossess Mr. Owen of his dog.

63. Hawkins' dispossession of Mr. Owen of his dog constitutes a trespass to chattel for which Mr. Owen has suffered damages for which he can recover under 42 U.S.C. § 1983.

## COUNT V:  PUNITIVE DAMAGES

64. Plaintiff incorporates above paragraphs 1 - 63 by reference as if fully set forth herein.

65. Pursuant to N.C. Gen. Stat. § 1D-15(a), punitive damages may be awarded if the claimant proves the defendant is liable for compensatory damages and that the defendant engaged in willful or wanton conduct related to the injury for which compensatory damages were awarded.

66. Pursuant to N.C. Gen. Stat. § 1D-5(7), "willful or wanton conduct" is a conscious and intentional disregard of the indifference to the rights and safety of others, which the defendant knows or should know is reasonably likely to result in injury, damage, or other harm.

67. Goodwin, Hawkins, Tipton, and/or Newell maliciously, wantonly, unlawfully, and unnecessarily used excessive force in violation of N.C. Gen. Stat. § 15A-401(d) resulting in assault and battery when arresting Mr. Owen on or around August 11, 2018.

68. Goodwin, Hawkins, Tipton, and/or Newell showed a blatant disregard for Mr. Owen's right to remain free from unreasonable seizure under the Fourth Amendment to the United States Constitution and/or his right to remain free from unlawful deprivation of liberty under Article I § 19 of the North Carolina Constitution, and their above actions amounted to a willful violation of the same.

69. Hawkins' execution of Mr. Owen's dog amounts to an intentional, malicious, and willful and wanton disregard of Mr. Owen's right to remain free from unlawful deprivation of property under Article I § 19 of the North Carolina Constitution.

70. Hawkins' dispossessed Mr. Owen of his dog constituting a trespass to chattel in a malicious and/or willful and wanton manner.

71. As a result of the malicious and/or willful and wonton conduct of Goodwin, Hawkins, Tipton, and/or Newell, Mr. Owen suffered damages including but not limited to physical injuries, psychological and/or emotional trauma, dispossession of property, and reasonable costs and attorneys' fees for which the Defendants are liable under 42 U.S.C. §§ 1983 and 1988.

72. Because the conduct of Goodwin, Hawkins, Tipton, and/or Newell resulted in compensatory damages to Mr. Owen and was malicious and/or willful and wanton, Mr. Owen can recover punitive damages pursuant to N.C. Gen. Stat. § 1D-15(a), et seq., of the North Carolina General Statutes.

**COUNT VI: *MONELL v. DEP'T OF SOCIAL SERVICES*, 436 U.S. 658 (1977)**

73. Plaintiff incorporates above paragraphs 1-72 by reference as if fully set forth herein.

74. On August 11, 2018, McDonald, under the authority delegated to him by Henderson County as the elected Sheriff, either expressly or implicitly, was responsible for establishing, enforcing, directing, supervising, and controlling the customs, practices, usages, and procedures applicable to deputies of the Henderson County Sheriff's Office.

75. Griffin, under the authority delegated to him by Henderson County as the elected Sheriff, either expressly or implicitly, is currently responsible for establishing, enforcing, directing, supervising, and controlling the customs, practices, usages, and procedures applicable to deputies of the Henderson County Sheriff's Office.

76. Upon information and belief, McDonald, Griffin, and/or Henderson County are jointly and severally responsible for establishing, enforcing, directing, supervising, and controlling the customs, practices, usages, and procedures applicable to the Henderson County Sheriff's Office such that their edicts, acts, directions, or lack thereof, regarding customs, practices, usages, and procedures represent official policy of the Henderson County Sheriff's Office.

77. Upon information and belief, McDonald, Griffin, and/or Henderson County, have maintained a policy, custom, or pattern of promoting, facilitating, and condoning aggressive, abusive, and assaultive behavior toward arrestees and detainees with actual or constructive knowledge thereof and deliberate indifference thereto.

78. Upon information and belief, the excessive force used by Goodwin, Hawkins, Tipton, and/or Newell, when arresting Mr. Owen, resulting in the violation of his civil rights and damages caused thereby, was consistent with the policy, custom, or pattern of promoting, facilitating, and/or condoning aggressive, abusive, and assaultive behavior toward arrestees and detainees maintained with actual or constructive knowledge and deliberate indifference by McDonald, Griffin, and/or Henderson County.

79. Any reasonable policymaker would know that custom and usage maintained by McDonald, Griffin, and/or Henderson County would lead to violations of civil rights of arrestees and detainees such as those suffered by Mr. Owen.

80. As a direct result of the policy, custom, or pattern of promoting, facilitating, and condoning aggressive, abusive, and assaultive behavior toward arrestees and detainees, Mr. Owen suffered violations of his civil rights and damages.

81. Upon information and belief, under *Monell v. Dept. of Social Servs,* 436 U.S. 658 (1977), McDonald, Griffin, and/or Henderson County are jointly and severally liable for the damages suffered by Mr. Owen as a result of the violation of his civil rights.

**PRAYER FOR RELIEF**

WHEREFORE, the Plaintiffs pray the Court for the following relief:

1. That the Plaintiff have and recover from the Defendants compensatory damages in an amount greater than One Million and No/00 Dollars ($1,000,000.00);

2. That this Court award Plaintiffs pre-judgment and post-judgment interest and recovery of costs, including reasonable attorney's fees, pursuant to 42 U.S.C. §§ 1988 and 1920;

3. That the Plaintiffs have a trial by jury on all issues and claims so triable set forth in this Complaint;

4. That this Court adjudge, decree, and declare the rights and other legal relations with the subject matter here in controversy, in order that such declaration shall have the force and effect of final judgment;

5. That this Court retain jurisdiction of this matter for the purpose of enforcing orders of this Court; and

6. That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted this the 11th day of August, 2021.

s/Nicholas A. White
N.C. State Bar: 53661
s/Stephen P. Lindsay
N.C. State Bar: 13017
Lindsay Law, PLLC
46 Haywood Street, Suite 200
Asheville, NC 28801
Telephone: (828) 551-6446
Email: nick@lindsaylaw.org
Email: spl@lindsaylaw.org
*Attorneys for the Plaintiff*