# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### CIVIL CASE NO. 1:21-cv-00217-MR-WCM

| | | |
|---|---|---|
| JAMES BRADLEY OWEN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **MEMORANDUM OF** |
| | ) | **DECISION AND ORDER** |
| CHRISTOPHER M. GOODWIN, | ) | |
| BENJAMIN HAWKINS, JACOB | ) | |
| TIPTON, NICHOLAS A. NEWELL, | ) | |
| LOWELL S. GRIFFIN, CHARLES S. | ) | |
| MCDONALD, and HENDERSON | ) | |
| COUNTY, NORTH CAROLINA, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment Pursuant to Rule 56 of the Federal Rules of Civil Procedure [Doc. 47] and the Defendants' Motion to Exclude the Testimony of Dr. Timothy Powers [Doc. 49].

## I.     PROCEDURAL BACKGROUND

On August 11, 2021, Plaintiff James Bradley Owen ("Plaintiff") filed this action in this Court against Defendant Christopher M. Goodwin in his individual and official capacities, Defendant Benjamin Hawkins in his individual and official capacities, Defendant Jacob Tipton in his individual

and official capacities, Defendant Nicholas A. Newell in his individual and official capacities, Lowell S. Griffin in his official capacity, Charles S. McDonald in his official capacity, and Henderson County, North Carolina. [Doc. 1]. This action arises out of an incident that occurred on August 11, 2018, in Mills River, Henderson County, North Carolina, that ultimately led to the Plaintiff's arrest and conviction for three counts of assault with a firearm on a law enforcement officer. [Doc. 1]. The Plaintiff alleges multiple federal and state law claims: (1) violation of the Fourth Amendment to the United States Constitution and/or violation of Article I § 19 of the North Carolina Constitution; (2) assault and battery; (3) unlawful deprivation of property; (4) trespass to chattel; (5) punitive damages; and (6) civil rights violations under Monell v. Dept. of Social Servs., 436 U.S. 658 (1978). [Doc. 1].

On June 14, 2022, Defendants Jacob Tipton and Nicholas A. Newell filed counterclaims for battery against the Plaintiff, and Defendant Goodwin filed a counterclaim for assault against the Plaintiff. [Doc. 29]. All Defendants now move for summary judgment on all the Plaintiff's claims, and Defendant Goodwin moves for summary judgment on his counterclaim.[1] [Doc. 47]. In addition, the Defendants move to exclude the testimony of

---

[1] Defendants Tipton and Newell have not moved for summary judgment with respect to their counterclaims at this time.

Plaintiff's expert, Dr. Timothy Powers. [Doc. 49]. Having been fully briefed, this matter is now ripe for disposition.

## II. STANDARD OF REVIEW

Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "As the Supreme Court has observed, 'this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.'" Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 519 (4th Cir. 2003) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–48 (1986)) (emphasis in original).

A genuine issue of fact exists if a reasonable jury considering the evidence could return a verdict for the nonmoving party. Shaw v. Stroud, 13 F.3d 791, 798 (4th Cir. 1994), cert. denied, 513 U.S. 814 (1994). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat, 346 F.3d at 522. If this showing is made, the burden then shifts to the

nonmoving party who must convince the Court that a triable issue does exist. Id. In considering the facts on a motion for summary judgment, the Court will view the pleadings and material presented in the light most favorable to the nonmoving party. Matsushita Elec. Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587–88 (1986).

## III.   FACTUAL BACKGROUND

As a preliminary matter, the Court addresses the forecasts of evidence presented by the parties. In support of their motion for summary judgment, Defendants present the following: excerpts from the Plaintiff's state criminal trial on the charge of assaulting a police officer with a firearm [Doc. 48-2]; excerpts from the Plaintiff's deposition [Doc. 48-3]; excerpts from the deposition of the Plaintiff's expert, Tim Powers [Doc. 48-4]; and a report from the Defendants' expert, Mike Brave [Doc. 48-5]. The Defendants' brief contains a factual recitation with citations to this forecast of evidence. [Doc. 48]. In response, the Plaintiff has filed a brief that contains a "Summary of Facts," which consists of a three-and-a-half-page description of the alleged incident with no citations to the record. Instead, Plaintiff's counsel purports to "verify" the contents of his brief with affidavits of truthfulness from the Plaintiff and Plaintiff's counsel [Doc. 54, 54-1, 54-2]. In his affidavit, the Plaintiff confirms that he has read the Summary of Facts in the Brief and that

it is "a true and accurate recitation of the facts known to [him], [and] heard by [him] in the criminal trial in [his] State Court criminal trial." [Doc. 54-2]. The Plaintiff's counsel's affidavit similarly states that the Summary of Facts "is an accurate recitation of the admissible facts and evidence." [Doc. 54-1]. The Plaintiff also submitted photo and video exhibits documenting the incident and the Plaintiff's alleged injuries. [Docs. 54-3, 54-4, 54-5, 54-6 54-7, 54-8, 54-9, 54-10, 54-11, 54-12, 54-13]. The Court has reviewed these exhibits and finds them consistent with the facts as presented here.

In a motion for summary judgment, the movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted). Once this initial burden is met, the burden shifts to the nonmoving party, who then "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. Rather, the nonmoving party must oppose a proper summary judgment motion with citation to "depositions, documents,

electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials in the record." <u>See</u> <u>id.</u>; Fed. R. Civ. P. 56(c)(1)(a). Namely, the nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." <u>Anderson</u>, 477 U.S. at 248. To that end, only evidence admissible at trial may be considered by the Court on summary judgment. <u>Kennedy v. Joy Technologies, Inc.</u>, 269 F. App'x 302, 308 (4th Cir. 2008) (citation omitted).

What Plaintiff's counsel has done here entirely fails to comport with these requirements. Given that submitting "verified" facts is not a recognized or proscribed means of presenting facts to this Court, the Court cannot consider the factual background as presented in the Plaintiff's "verified" brief and must instead rely on the only admissible evidence before it, <u>i.e.</u>, that presented by the Defendants and the photo and video exhibits presented by the Plaintiff.

Viewing the forecast of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts. On August 11, 2018, Defendant Goodwin was patrolling in Mills River when he received a call that shots had been fired from a vehicle towards a house on South Mills River Road. [Doc. 48-2: Crim. Trans. at 4-5]. Upon arriving at the Mills River

Community Center, he found an empty pickup truck, saw no suspects in the area, and then heard three gunshots.  [Id. at 7-11].  Defendant Goodwin then backed his patrol car down the dirt path next to the Community Center onto the paved Mills River Road, and radioed dispatch to let them know that someone was shooting at him, and that he needed backup.  [Id. at 11].  A few minutes later, Defendant Goodwin saw a person, later identified as the Plaintiff, walk out of the woods in a non-aggressive manner, holding a rifle by the center stock with the barrel pointing skyward.  [Id. at 12-13].  As the Plaintiff came out of the woods, the Plaintiff's dog, which was unleashed, ran alongside him.  [Id. at 68].  The Plaintiff admittedly had been drinking prior to Defendant Goodwin's arrival on the scene and had called a friend to pick him up due to his intoxication.  [Doc. 48-3: Plaintiff's Dep. at 5].

As the Plaintiff emerged from the woods, Defendant Goodwin began repeatedly yelling commands for Plaintiff to drop the rifle and walk towards him, but the Plaintiff did not initially follow Defendant Goodwin's commands. [Doc. 48-2: Crim. Trans. at 12-14].  At one point the Plaintiff turned the rifle toward Defendant Goodwin, but then eventually put the rifle on the tailgate of the pickup truck parked next to the Plaintiff.  [Id. at 14].  The Plaintiff informed Defendant Goodwin that his partner was in the woods with a scope rifle.  [Id. at 15].  The Plaintiff began coming down the driveway but stopped

right before the paved drive. [Id. at 18]. Defendant Goodwin continued to command the Plaintiff to walk towards him, but the Plaintiff refused and verbally confirmed that he would not come any closer to Defendant Goodwin. [Id. at 17].

Upon the arrival of Defendants Hawkins, Newell, and Tipton, the deputies began to approach the Plaintiff to try to detain him. [Id. at 19]. At one point, the Plaintiff threw his hands into the air and then down into his pockets and pulled out his cellphone. [Id.]. The Defendants were initially unsure what the Plaintiff had pulled out of his pocket and were concerned it might be a handgun. [Id. at 19, 100]. The Plaintiff continued to ignore the officers' commands to put his hands up or get down on the ground. [Id. at 97]. The Defendants at some points were giving the Plaintiff multiple different commands. [Id. at 166].

The Defendant Hawkins made initial contact with the Plaintiff by attempting to push him to the ground. [Id. at 100]. Defendant Hawkins testified that because the Plaintiff was standing on a hill, he hopefully would fall over once pushed, and the deputies would then more easily be able to handcuff him. [Id.]. However, the Plaintiff did not "seem to be affected" by the push and only stepped back. [Id.]. Defendants Newell and Tipton then quickly pushed Defendant Hawkins out of the way and made contact with

the Plaintiff.[2]  [Id. at 23, 100].  At one point, the Plaintiff was hit with an elbow on his upper torso and staggered backwards.  [Id. at 73-74].  Defendant Tipton and the Plaintiff were then both "throwing several punches."  [Id. at 127].  Once the Defendants got the Plaintiff on the ground, he continued to fight, trying to hit and strike the Defendants who were detaining him, and continued to resist arrest and ignore their commands.  [Doc. 48-2 at 146]. Defendant Tipton hit the Plaintiff with the butt of his rifle multiple times in an attempt to gain control of him.  [Id. at 147].  One of the Defendants also hit the Plaintiff in the face with a gun, and the Plaintiff testified that someone was hitting him with something on the back of the head and kicking him once he was face down on the ground.  [Doc 48-3: Plaintiff's Dep. at 6].  The Defendants told the Plaintiff not to resist, and he repeatedly told the officers that he was not resisting.  [Id. at 6].

Although he was unsure exactly which Defendant was hitting or kicking him, when asked if he pushed any of the police officers, the Plaintiff testified, "I could have.  I got hit in the face, and at that point, I'm sure natural instinct just kind of kicked in."  [Id. at 7].  The Plaintiff and Defendant Tipton were at one point fighting on the ground, and Defendant Tipton continued to give the

_____

[2] It is undisputed that only Hawkins, Newell, and Tipton made physical contact with the Plaintiff. While Defendant Goodwin remained on the scene, he did not physically engage with the Plaintiff.

9

Plaintiff commands with which he failed to comply. [Doc. 48-2: Crim. Trans. at 148]. Defendant Newell was also on the ground and assisted Defendant Tipton in handcuffing the Plaintiff by rolling him onto his stomach and forcefully removing his hands from underneath him. [Id. at 148-49]. After a one-to-two-minute struggle, the Defendants were able to handcuff Plaintiff and arrest him. [Id. at 100-02]. They then called EMS to come treat the Plaintiff's head injury, but the Plaintiff refused treatment when EMS arrived. [Id. at 149].

During the Plaintiff's arrest, and while he was on the ground, his dog was running in circles around the officers; the Plaintiff did not give his dog any commands. [Doc. 48-3: Plaintiff's Dep. at 7-8]. While the dog did not bite any of the officers, it was nipping at the legs of everyone involved in the altercation. [Doc. 48-2: Crim. Trans. at 75, 101]. Defendant Hawkins testified that that he was concerned about the dog's aggressive behavior and was worried that once the Plaintiff and Defendants Tipton and Newell were wresting on the ground, much more vulnerable areas, like faces, necks, and hands, were going to be exposed for the dog to bite. [Id. at 101]. At that point, worried about the dangerousness of the dog's actions, Defendant Hawkins shot it. [Id. at 101-103]. The dog appeared to be killed instantly. [Id. at 103].

After Defendant Hawkins shot the dog, he and Defendant Goodwin went up towards the woods to look for the Plaintiff's partner. [Id. at 23]. The officers then saw non-party Hunter Wright coming out of the woods with his hands in the air. [Id. at 102]. Wright complied with Defendant Hawkins's commands to lay on the ground and was taken into custody with no force. [Id.].

The Plaintiff alleges several injuries resulting from his arrest, including cuts and scratches on his face and the back of his head, a swollen eye and cheek, and bruises on his back and sides. [Doc. 48-3: Plaintiff's Dep. at 9-10]. The Plaintiff admitted that, except for a scar on his cheek, he suffered no permanent physical injuries. [Id. at 10].

The Plaintiff was charged in North Carolina state court with three counts of assault with a firearm on a law enforcement officer and assault on a law enforcement officer with injury. State v. Owen, 2021-NCCOA-56, ¶ 7, 276 N.C. App. 147. The jury found the Plaintiff guilty on three counts of assault with a firearm on a law enforcement officer; the assault on a law enforcement officer with injury charge was dismissed. Id. The Plaintiff appealed, and the North Carolina Court of Appeals affirmed, finding no error. Id. at ¶ 29.

## IV.  DISCUSSION

### A.  Federal § 1983 Claims

#### 1.  Official Capacity/Government Entity Claims

The Federal Civil Rights Act, 42 U.S.C. § 1983, imposes civil liability upon every person who, under color of law, deprives another of rights secured by the Constitution and laws of the United States.  42 U.S.C. § 1983. To prevail on a § 1983 claim, the plaintiff has the burden of establishing (1) the deprivation of a right secured by the Constitution or laws of the United States, and (2) that the alleged deprivation was committed under color of state law.  Austin v. Paramount Parks, Inc., 195 F.3d 715, 727 (4th Cir. 1999).  By its terms, § 1983 "creates no substantive rights; it merely provides remedies for deprivation of rights established elsewhere." City of Okla. City v. Tuttle, 471 U.S. 808, 816 (1985) (citation omitted).

As an initial matter, Defendants Goodwin, Hawkins, Tipton, and Newell are entitled to summary judgment in their favor for all claims brought against them in their official capacities.  These claims are duplicative of the claims against the governmental employer, Defendants Griffin and McDonald, the current and former Sheriff of Henderson County, respectively, and should be dismissed.  Love-Lane v. Martin, 355 F.3d 766, 783 (4th Cir. 2004) (affirming district court's dismissal of individual capacity § 1983 claim against

Superintendent as essentially a claim against the Board of Education); Wright v. Town of Zebulon, 202 N.C. App. 540, 543-44, 688 S.E.2d 786, 789 (2010) (affirming dismissal of official capacity claims against the mayor, the town manager, the police chief, and other officers as "duplicative" of claims against the municipality). The Court now turns to the official capacity claims brought against Defendant Henderson County and Defendants Griffin and McDonald.[3] Local governing bodies, such as Defendant Henderson County, "can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." Monell v. Dep't of Social Servs., 436 U.S. 658, 690 (1978). Further, "although the touchstone of the § 1983 action against a government body is an allegation that official policy is responsible for a deprivation of rights protected by the Constitution, local governments, like every other § 1983 'person,' by the very terms of the statute, may be sued for constitutional deprivations visited pursuant to governmental 'custom' even though such a custom has not received formal

---

[3] The Defendants argue that Defendant McDonald can no longer be sued in his official capacity because he is no longer in the position of Sheriff of Henderson County. [Doc. 48 at 6-7]. However, Federal Rule of Civil Procedure 25(d) allows for the substitution of parties in their official capacities in this instance, and, furthermore, given the Court's holding on this claim, the Court need not reach this issue.

Case 1:21-cv-00217-MR-WCM   Document 59   Filed 09/29/23   Page 13 of 32

approval through the body's official decisionmaking channels." <u>Id.</u> at 690-91. This second category of <u>Monell</u> liability cases are often referred to as "pattern and practice" or "pattern and custom" cases. Further, it is said that "the municipal policy must be 'the moving force of the constitutional violation.'" <u>Id.</u> (citing <u>Polk County v. Dodson</u>, 454 U.S. 312, 326 (1981)). Proof of a single incident of unconstitutional activity, however, is not sufficient to impose liability under <u>Monell</u>, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>Tuttle</u>, 471 U.S. at 823-24. In order to succeed on his official capacity claims, Plaintiff must not only prove the deprivation of a constitutional right, but also that Defendant County, through the acts of its final decisionmaker regarding law enforcement issues (i.e., the Sheriff) caused the Plaintiff to be subjected to such deprivation. Under <u>Monell</u>, the County may only be held accountable if the deprivation was the result of municipal "custom or policy." <u>Tuttle</u>, 471 U.S. at 817.

Here, the Plaintiff contends that policies or customs of Defendants Henderson County and its Sheriff inflicted the Plaintiff's injuries, and therefore "McDonald, Griffin, and/or Henderson County are jointly and severally liable for the damages suffered by Mr. Owen as a result of the

violation of his civil rights."  [Doc. 15 at 1 (citing <u>Monell</u>, 436 U.S. at 691)].

The policies or customs on which Plaintiff relies are not official written policies of the Sheriff's Office, but rather a "policy" of "promoting, facilitating, and condoning aggressive, abusive, and assaultive behavior toward arrestees and detainees."  [Doc. 1 at 15].  However, the Plaintiff has forecasted no evidence that such policy, whether formal or informal, exists or was implicated in his alleged deprivation of rights.  As such, the Plaintiff's theory of liability under <u>Monell</u> is not supported by the evidence.

In order to withstand summary judgment here, the Plaintiff must prove more than a single incident of unconstitutional activity, "unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." <u>Tuttle</u>, 471 U.S. at 823-24.  The Plaintiff has not forecast evidence from which a jury could find an existing, unconstitutional policy.  Without presenting evidence of a single other incident involving the use of excessive force by a Sheriff's deputy, no reasonable juror could conclude that the Henderson County Sheriff's Office operated with the custom and practice of failing to adequately train its deputies on the use of force.  <u>See Tuttle</u>, 471 U.S. at 823-24.  And there is certainly no forecast of evidence that such failure caused any deprivation of the Plaintiff's constitutional rights.

As such, the Plaintiff has failed to forecast sufficient evidence of a custom or practice upon which <u>Monell</u> liability could be based. The Court will, therefore, grant summary judgment for the Defendants on the Plaintiff's official capacity and governmental entity claims under § 1983.

### 2. Individual Capacity Claims Against Deputies

The Court now turns to the § 1983 claims alleged against Defendants Goodwin, Hawkins, Tipton, and Newell (collectively, "Defendant Deputies") in their individual capacities.

Here, the Plaintiff alleges that Defendant Deputies used excessive force to arrest him in violation of the Fourth Amendment. [Doc. 1 at 9]. The Fourth Amendment prohibits police officers from using force that is "excessive" or not "reasonable" in the course of making an arrest. <u>Graham v. Connor</u>, 490 U.S. 386, 388 (1989); <u>Meyers v. Baltimore Cnty., Md.</u>, 713 F.3d 723 (4th Cir. 2013). Whether an officer has used excessive force to effect an arrest is based on "objective reasonableness," taking into account "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting or attempting to evade arrest by flight." <u>Graham</u>, 490 U.S. at 396, 399. Objective reasonableness is the touchstone; "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively

reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional." <u>Graham</u>, 490 U.S. at 397; <u>see also</u> <u>Stanton v. Elliott</u>, 25 F.4th 227, 233 (4th Cir. 2022) ("Whether an officer has used excessive force is judged by a standard of objective reasonableness.") (citation omitted). "In questioning the split-second decisions of police officers, [the Court] must avoid hindsight bias and try to place ourselves in the heat of the moment." <u>Stanton</u>, 25 F.4th at 233. Because each officer was facing a unique situation, the Court will evaluate each officer individually.

### a.    Officer Goodwin

An officer does not seize an individual if the officer's show of force does not either physically touch the individual or compel him to submit to the officer's authority. <u>See</u> <u>California v. Hodari D.</u>, 499 U.S. 621, 626-27 (1991). Here, the facts are undisputed that Defendant Goodwin did not physically touch the Plaintiff. While Goodwin was the first at the scene, the other three Deputy Defendants were the ones who made physical contact with the Plaintiff while Goodwin held back and then pursued non-party Wright. The only alleged act of Defendant Goodwin that the Plaintiff contends was a seizure was Goodwin's pointing his weapon at the Plaintiff whilst commanding him to put down his rifle and walk toward him. However, the

Plaintiff did not comply with Goodwin's commands, and as such did not submit to Goodwin's authority and thus was not "seized." Even if this act were a seizure, the undisputed facts show that Defendant Goodwin was pointing his weapon at the Plaintiff while the Plaintiff was holding his own weapon, a rifle, and that Goodwin was uncertain whether the Plaintiff had any additional weapons on him. As such, even if Defendant Goodwin had seized the Plaintiff, no reasonable jury could find Goodwin's actions under the circumstances to be unreasonable or an excessive use of force. Therefore, Defendant Goodwin is entitled to summary judgment on Plaintiff's excessive force claim.

### b. Officer Hawkins

Unlike Officer Goodwin, Officer Hawkins did make physical contact with the Plaintiff, albeit briefly. There is evidence from which a reasonable jury could find that Hawkins "seized" the Plaintiff when he attempted to push him onto the ground. [Doc. 48-2: Crim. Trans. at 23, 100]. The question is then whether the use of force was reasonable given the totality of the circumstances. No facts in the record could lead a reasonable jury to find that Hawkins' conduct was objectively unreasonable, even viewing the evidence in the light most favorable to the Plaintiff. The undisputed forecast of evidence shows that at the time that Hawkins pushed the Plaintiff,

(1) Hawkins was aware shots had been fired towards Defendant Goodwin from the woods where the Plaintiff appeared; (2) Hawkins was unsure if the Plaintiff was still armed; (3) Hawkins knew there was another armed party somewhere near the scene; (4) Hawkins knew the Plaintiff was ignoring his and the other officers' commands; (5) alongside two other officers, Hawkins approached the Plaintiff and attempted to subdue him by pushing him, in hopes that the Plaintiff would trip backwards and the officers would then be able to detain him; (6) after his initial push did not take the Plaintiff down, Hawkins backed off of the Plaintiff while the other officers moved in and attempted to detain him.  [Id. at 11, 15, 17, 19, 97, 100, 146].

Under these circumstances, it was objectively reasonable for Hawkins to conclude that the Plaintiff posed an immediate threat to his safety or the safety of others.  See Anderson v. Russell, 247 F.3d 125 (4th Cir. 2001); Slattery v. Rizzo, 939 F.2d 213 (4th Cir. 1991); Craven v. Novelli, No. 521CV00174KDBDSC, 2023 WL 2484825 (W.D.N.C. Mar. 13, 2023).  This conclusion stands even if the Plaintiff did not actually have an additional weapon on his person.  In Slattery and Anderson, the Fourth Circuit found that despite an officers' mistaken belief that an individual possessed a firearm and was about to use it, a suspect's movements toward a perceived firearm while disobeying the officer's command not to do so "would rightfully

cause a reasonable officer to fear that the suspect intended to cause imminent deadly harm." See Slattery, 939 F.2d at 215-16 (holding that an officer reasonably feared for his life after he twice ordered the suspect to put his hands up, but the suspect ignored those commands, instead reaching down to an area out of the officer's sight and grabbing an object that turned out to be a beer bottle); Anderson, 247 F.3d at 128, 131 (holding that an officer reasonably feared for his life during an investigation of a man thought to be armed after the officer ordered the man to get down on his knees and put his hands up, but the man began reaching in his back left pocket for what turned out to be a Walkman radio).

Officers need not be absolutely sure of the nature of the threat or the suspect's intent to cause them harm to act in self-defense, but rather need only have a sound reason to believe that there is a serious threat to their safety or the safety of others. See Slattery, 939 F.2d at 215-16; McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir. 1994) (holding that officer had a right to use deadly force when the officer had reason to believe the suspect was armed, although the officer could not confirm that the suspect was armed); Greenidge v. Ruffin, 927 F.2d 789, 792 (4th Cir. 1991) (affirming the entry of judgment for the officer although he could not confirm the nature of the weapon, which turned out to be a wooden nightstick, before using deadly

force); Elliott v. Leavitt, 99 F.3d 640, 644 (4th Cir. 1996) ("Before employing deadly force, police must have sound reason to believe that the suspect poses a serious threat to their safety or the safety of others . . . [but] need not be absolutely sure . . . of the nature of the threat or the suspect's intent.").

Here, even assuming Hawkins was mistaken in his belief that the Plaintiff had another weapon, Hawkins had sound reason to fear for his safety and the safety of others.  See Saucier v. Katz, 533 U.S. 194, 206 (2001) ("Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of" an immediate threat, and "in those situations courts will not hold that they have violated the Constitution.").  Hawkins knew that shots had been fired before he arrived on the scene and had reason to believe that the Plaintiff was still armed.  Based on this information, a reasonable officer would have had probable cause to believe the Plaintiff posed an immediate threat to the safety of the officers on scene.  Given that Hawkins merely attempted to push the Plaintiff to the ground in order to place him under arrest, his use of such minimal force was clearly reasonable under the circumstances.  No jury could find otherwise.  Hawkins is therefore entitled to summary judgment on the Plaintiff's excessive force claim.

### c. Officers Tipton and Newell

After Defendant Hawkins tried to push the Plaintiff to the ground, Officers Tipton and Newell both moved in to subdue the Plaintiff. [Doc. 48-2: Crim. Trans. at 23,100]. Both the facts as presented at the Plaintiff's criminal trial and the dashboard camera video tend to suggest that Tipton and Newell kicked, punched, and hit the Plaintiff, at times using the butts of their guns. [Id. at 127, 147; Doc. 48-3: Plaintiff's Dep. at 6]. The Defendants do not dispute that their actions constitute a seizure of the Plaintiff. However, as with Officer Hawkins, Officers Tipton and Newell were aware at the time that they physically engaged with the Plaintiff that shots had been fired at the scene before they arrived, the Plaintiff might still be armed, there was another armed party nearby, the Plaintiff was ignoring the officers' commands, and, additionally, that Officer Hawkins had unsuccessfully attempted to subdue the Plaintiff with lesser force, but the Plaintiff continued physically resisting. [Id. at 11, 15, 17, 19, 97, 100, 146].

While Officers Tipton's and Newell's use of force went beyond that of Officer Hawkins, no reasonable jury could find that their use of force was unreasonable. Again, based on the information available at the time, a reasonable officer would have had probable cause to believe the Plaintiff posed an immediate threat to the safety of the officers on scene and was

actively resisting their attempts to arrest him. Therefore, these two Defendants' actions in punching, hitting, kicking, and otherwise attempting to restrain the Plaintiff through the use of force was undoubtedly reasonable, and the Defendants are entitled to summary judgment on the individual claims against them.

### 3. Qualified Immunity

Qualified immunity "is an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). The application of qualified immunity requires a two-part inquiry. First, the Court must determine "whether a constitutional right would have been violated on the facts alleged." Saucier, 533 U.S. at 200 (2001), overruled in part by Pearson v. Callahan, 555 U.S. 223 (2009). Second, the Court must determine "whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Pearson, 555 U.S. at 232 (citation omitted). "In performing this analysis, however, a court is not required to consider the above two steps in any particular order. A court may exercise its discretion to determine which of the two steps of the qualified immunity analysis 'should be addressed first in light of the circumstances in the particular case at hand.'" Williams v. Ozmint, 716 F.3d 801, 805-06 (4th Cir. 2013) (quoting in part Pearson, 555 U.S. at 236). "If no constitutional right

would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Saucier, 533 U.S. at 201.  Because this Court has already determined that the undisputed forecast of evidence does not show the Plaintiff's constitutional rights were violated, the Court concludes that the individual deputies are also entitled to qualified immunity.

### B.    State Law Claims Against Defendants

#### 1.    Constitutional Claims

##### a.    Excessive Force

In addition to his federal constitutional claim, the Plaintiff claims that the Deputies' use of excessive force amounted to an unlawful seizure under Article I § 19 of the North Carolina Constitution.  [Doc. 1 at 9].  Because the North Carolina Constitution is co-extensive with the Constitution of the United States on the issue of excessive force, the state constitutional claim must fail for precisely the same reasons.  See McNeill v. Harnett Cty., 398 S.E.2d 475, 481 (N.C. 1990) (stating that the "law of the land" clause of the North Carolina Constitution is synonymous with the due process clause of the Federal Constitution).

In addition, a plaintiff may pursue a direct action under the North Carolina Constitution only where the plaintiff lacks a remedy under state law

adequate to redress the alleged violation.  Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 678 S.E.2d 351, 354 (2009).  The Plaintiff has available an adequate remedy in the form of individual capacity claims such that Plaintiff's state constitutional claim is barred.  That these individual capacity claims may be barred by public officer's immunity does not negate their adequacy as a remedy.  DeBaun v. Kuszaj, 228 N.C. App. 567 (2013) (unpublished); Rousselo v. Starling, 495 S.E.2d 725, 731–32 (N.C. App. 1998).  In sum, the Court concludes that the Defendants are entitled to summary judgment as to the Plaintiff's North Carolina constitutional claim for excessive force.

### b.    Unlawful Deprivation of Property

The Plaintiff also asserts a claim for unlawful deprivation of property under Article I § 19 of the North Carolina Constitution for the shooting of his dog.  [Doc. 1 at 11].  As with the previous constitutional claim, under North Carolina law, a cause of action under the state constitution exists only in the absence of an adequate state remedy.  Craig, 678 S.E.2d at 354.  Because the Plaintiff can, and indeed did, bring a claim for trespass to chattel for the shooting of his dog, the Defendants are entitled to summary judgment on this claim.

### 2. Assault and Battery

A civil action for assault and battery is available under North Carolina law against one who uses force for the accomplishment of a legitimate purpose (such as a justifiable arrest), but only if the force used is excessive under the circumstances.  Myrick v. Cooley, 371 S.E.2d 492, 496 (N.C. App. 1988).  "The question of '[w]hether an officer has used excessive force is judged by a standard of objective reasonableness.'" Jordan v. Civil Service Bd., 570 S.E.2d 912, 918 (N.C. App. 2002) (quoting Clem v. Corbeau, 284 F.3d 543, 550 (4th Cir. 2002)).

Here, the Plaintiffs' assault and battery claims are resolved by this Court's previous determination in the context of the Plaintiff's Section 1983 claims that based on the undisputed facts the Defendants' use of force was objectively reasonable.  In light of this determination, the assault and battery claim too must fail as a matter of law.  See Myrick, 371 S.E.2d at 496.

### 3. Trespass to Chattel

The Plaintiff asserts a state law claim for trespass to chattel against Defendant Hawkins for the killing of his dog.  [Doc. 1 at 12].  Under North Carolina law, the elements of trespass to chattel are: (1) that the plaintiff had "actual or constructive possession of the personalty or goods in question at the time of the trespass," and (2) that there was an "unauthorized, unlawful

interference or dispossession of the property." Fordham v. Eason, 521 S.E.2d 701, 704 (N.C. 1999). It is settled law that the use of deadly force against a household pet is reasonable only if the pet poses an immediate danger and the use of force is unavoidable. Ray v. Roane, 948 F.3d 222, 230 (4th Cir. 2020).

Here, the undisputed forecast of evidence shows that the Defendant's use of deadly force against the Plaintiff's dog was reasonable. As discussed with regard to the § 1983 against Defendant Hawkins, the Deputies were confronted with a situation where the Plaintiff was resisting arrest, had told officers there was another armed person nearby, and was accompanied by an unleashed dog who was frantically running around and nipping at the officers. [Doc. 48-2: Crim. Trans. at 75, 101; [Doc. 48-3: Plaintiff's Dep. at 7-8]. The dog indeed posed an immediate threat to Defendant Hawkins and his fellow officers, as the dog's behavior was disruptive to their efforts to subdue the Plaintiff. The dog easily could have caused serious injury to one of the officers. Moreover, the distraction presented by the dog caused the Defendants' assessment of the threat presented by the Plaintiff to be much more difficult, dangerous, and potentially deadly. As the deputies testified at the criminal trial against the Plaintiff, Defendant Hawkins felt he was left with no other option but to shoot the dog in order to avoid the danger it posed.

[Doc. 48-2: Crim. Trans. at 101]. Therefore, no reasonable jury could find that the Defendant was unjustified in subduing the Plaintiff's dog or was unauthorized to use deadly force in doing so.

### 4. Sovereign Immunity

In addition to their substantive issues, the Plaintiff's state tort law claims against the Defendants in their official capacities are barred under the doctrine of sovereign immunity. In North Carolina, "[i]t is well settled that pursuant to the doctrine of sovereign immunity, the State is immune from suit absent waiver of immunity" and that a "suit against a public official in his official capacity is a suit against the State." White v. Trew, 363, 736 S.E.2d 166, 168 (N.C. 2013) (citation and internal quotation marks omitted). "Sheriffs and deputy sheriffs are considered public officials for purposes of sovereign immunity." Morgan v. Spivey, No. 5:16-cv-00365-FL, 2017 WL 4399539, at *6 (E.D.N.C. Sept. 29, 2017). "However, a sheriff may waive governmental immunity in at least two ways, by the purchase of a bond, N.C. Gen. Stat. § 58-76-5, or by purchase of liability insurance, N.C. Gen. Stat. § 153A-435(a)." Id.

Here, the Plaintiff has not alleged any waiver of sovereign immunity, nor presented any facts that would support such an allegation. Therefore, the Defendants are entitled to summary judgment with respect to the

Plaintiff's official capacity claims for assault and battery and trespass to chattel.

### C.    Punitive Damages

Because all the Plaintiff's substantive claims cannot withstand summary judgment, his claim for punitive damages must fail as well. Therefore, the Defendants are entitled to summary judgment on the Plaintiff's claim for punitive damages.

### D.    Counterclaim Against Plaintiff

The Defendant Goodwin has also moved for summary judgment for his counterclaim of assault against the Plaintiff.  [Doc. 47].  North Carolina looks to the common law for the definition of the intentional tort of assault.

> An assault is an offer to show violence to another without striking him, and a battery is the carrying of the threat into effect by the infliction of a blow.  The interest protected by the action for battery is freedom from intentional and unpermitted contact with one's person; the interest protected by the action for assault is freedom from apprehension of a harmful or offensive contact with one's person.

Dickens v. Puryear, 276 S.E.2d 325, 330 (N.C. 1981).  The elements of assault, therefore, are: (1) intent, (2) offer of injury, (3) reasonable apprehension, (4) apparent ability, and (5) imminent threat of injury.  Hawkins v. Hawkins, 400 S.E.2d 472, 475 (N.C. App. 1991), aff'd, 417 S.E.2d 447 (N.C. 1992).

Here, the Plaintiff has already been charged and convicted in state court of three counts of assault with a firearm on an officer.  State v. Owen, 2021-NCCOA-56, ¶ 7, 276 N.C. App. 147.  In the criminal context, "[t]he elements of the offense of assault with a firearm on a law enforcement officer are: (1) an assault; (2) with a firearm; (3) on a law enforcement officer; (4) while the officer is engaged in the performance of his duties." State v. Dickens, 592 S.E.2d 567, 571 (N.C. App. 2004) (citation omitted); see N.C. Gen. Stat. § 14-34.5(a) (2015).  Under the applicable state law, "[a]n assault is an overt act or attempt, with force and violence, to do some immediate physical injury to the person of another, which show of force or violence must be sufficient to put a person of reasonable firmness in fear of immediate physical injury." State v. Childers, 572 S.E.2d 207, 212 (N.C. App. 2002) (citation and quotations omitted).

Furthermore, the undisputed facts show that the Plaintiff indeed did intentionally fire three shots that resulted in the Defendant Goodwin's imminent fear of injury, as evidenced by his retreating behind his car and radioing for backup.  [Doc. 48-2: Crim. Trans. at 7-11].  Based on the undisputed forecast of evidence presented by the parties here, the Court concludes that no reasonable jury could find for the Plaintiff on the Defendant's counterclaim for assault.  Therefore, the Court concludes that

Defendant Goodwin is entitled to summary judgment on this counterclaim as to the issue of liability.

### E.  Motion to Exclude Testimony

Because all of the Plaintiff's claims fail at this stage, the Court will not reach the merits of the Defendants' Motion to Exclude the Testimony of Dr. Timothy Powers, the Plaintiff's expert, and the motion will instead be denied as moot.

### ORDER

**IT IS, THEREFORE, ORDERED** that the Defendants' Motion for Summary Judgment [Doc. 47] is **GRANTED**, and the Plaintiff's claims are hereby **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Defendant Goodwin is granted summary judgment as to his counterclaim against the Plaintiff for assault as to the issue of liability.

**IT IS FURTHER ORDERED** that Defendants' Motion to Exclude the Testimony of Dr. Timothy Powers [Doc. 49] is **DISMISSED AS MOOT**.

This matter shall proceed to trial for disposition of the counterclaims for battery asserted by Defendants Tipton and Newell and for the determination of damages for Defendant Goodwin's counterclaim for assault.

**IT IS SO ORDERED.**

Signed: September 29, 2023

Martin Reidinger
Chief United States District Judge